**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. |
| | ) | 07-40013-FDS |
| | ) | |
| **MATTHEW MAHONEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AMENDED MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

**SAYLOR, J.**

This is a prosecution for drug-related offenses. The indictment charges defendant Matthew Mahoney, then a corrections officer at the Worcester County House of Correction, with conspiracy to distribute oxycodone and possession of oxycodone with intent to distribute. Defendant has moved to dismiss the indictment on the grounds that the Speedy Trial Act has been violated. Specifically, he contends that more than 70-days of non-excludable delay have passed and that dismissal is required pursuant to 18 U.S.C. §§ 3161, 3162(a)(2). For the reasons stated below, the motion will be denied.

**I.   Background**

On July 11, 2007, a grand jury returned an indictment charging defendant with conspiracy to distribute oxycodone, and possession with intent to distribute oxycodone.

On July 12, Magistrate Judge Hillman arraigned the defendant and issued a scheduling order. In accordance with the scheduling order's invitation to submit a joint memorandum in lieu of a status conference, the parties submitted a joint memorandum on August 22, 2007. In the

joint memorandum, the parties advised the Court that:

> (1) they agreed that the government "anticipates providing additional discovery," including conversations recorded at the House of Correction in which defendant participated;
>
> (2) they agreed "that the period from <u>August 27, 2007</u> . . . through the <u>next status conference</u> constitutes excludable delay in the interests of justice because the parties seek to use this period . . . to complete review of discovery and explore a non-trial disposition of the case"; and,
>
> (3) they believed that "an interim status conference should be held <u>on or after September 27, 2007</u>."

(emphasis added).

On September 17, 2007, the government provided defendant with additional discovery, including CD recordings of intercepted conversations. Thereafter, the government attempted to have the CDs reformatted so that the recordings could be heard on conventional disc players. *See* Jan. 30, 2008 Interim Status Report, ¶1 (noting government's difficulty with recordings). On December 7, 2007, the government provided reformatted CDs.

On January 22, 2008, the Court held a status conference. In his status report, Magistrate Judge Hillman reported that the defendant needed additional time to review discovery and continued the matter to February. Magistrate Judge Hillman also determined that August 27, 2007, through January 22, 2008, constituted a period of excludable delay. Although noting that through inadvertence the status conference was not timely scheduled, Magistrate Hillman also noted that the parties had: (1) requested an open-ended date for a status conference; (2) used the

period of excludable delay to resolve a discovery matter and explore a non-trial disposition; (3) agreed that the period to the next status conference would be excludable; and, (4) agreed that the defendant, who was on pretrial release, was not prejudiced by the delay. Magistrate Judge Hillman accordingly found that the continuance was in the interests of justice and authorized by 18 U.S.C. § 3161.

**II.     Analysis**

The Speedy Trial Act requires that trial begin within seventy days from indictment or a defendant's initial appearance. *See* 18 U.S.C. §3161(c)(1). However, the Act also provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial . . . must commence." *See* 18 U.S.C. §3161(h). Among the excluded periods are a period of delay resulting from a continuance in which a court finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial. *See* 18 U.S.C. §3161(h)(8)(A).[1] "The purpose of [section] (h)(8) is to make the Speedy Trial Act 'flexible enough to accommodate the practicalities of our adversary system.'" *United States v. Rush*, 738 F.2d 497, 508 (1st Cir. 1984), *quoting United States v. Mitchell*, 723 F.2d

---

[1] Section 3161(h) states in relevant part:

The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence: . . .

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

1040, 1044 (1st Cir. 1983) (upholding 17-day enlargement of time to indict).

In *United States v. Balsam*, 203 F.3d 72 (1st Cir. 2000), the First Circuit held that a 206-day delay did not violate the Act. In *Balsam*, the parties submitted a joint motion to continue a hearing on a defendant's various pretrial motions. The motion stipulated that the government was in the process of providing defense counsel with 79 transcripts of recorded conversations, as well as other discovery materials, and that once that process was completed, the parties would be in a better position to conduct a meaningful hearing before the Court. *Id.* at 79. Through counsel, the moving defendant expressly agreed that the requested continuance would serve the ends of justice and that such action outweighed the best interests of the public and the defendants in a speedy trial. *Id.* Although it allowed the continuance, the district court did not simultaneously reschedule the hearing date. *Id.* Ultimately, it held the hearing 206 days after a superseding indictment had been filed. *Id.*

On appeal, the First Circuit found no error in the district court's exclusion of time. It noted that the defendant had consented to the continuance, and that the joint motion itself explained the grounds for the delay. *Id.* at 80. Furthermore, it found that the open-ended continuance was granted because the parties suggested no date certain for rescheduling the hearing. *Id.*, *citing Rush*, 738 F.2d at 508 (1st Cir.1984) ("[I]n some cases . . . a court is forced to order an (h)(8) continuance without knowing exactly how long the reasons supporting the continuance will remain valid.").

*Balsam* is dispositive. As in *Balsam*, the parties here jointly moved for an open-ended continuance. Both parties advised the court that the continuance was necessary, and that the interests of justice served by the continuance outweighed the countervailing interests of the

defendant and the public in a speedy trial. Both parties stated how the continuance would strike that balance—that it would be used to complete a review of discovery and allow time to explore a possible plea. Both parties left the date for a status conference open-ended: "on or after September 27, 2007." Finally, both parties agreed "that the period from August 27, 2007, the date of the initial status conference, through the next status conference constitutes excludable delay in the interests of justice." *See* Joint Memorandum at 2.

The Court granted the joint motion, thus giving the defendant what he asked for. Under the circumstances, the Speedy Trial Act has not been violated. *See Rush*, 738 F.2d at 508 ("although defendants do not bear the primary responsibility for alerting the court to speedy trial deadlines, this does not mean that they may deliberately obtain an (h)(8) continuance for their own convenience . . . and then later claim that the court abused its discretion in granting the requested continuance"); *United States v. Shandell*, 800 F.2d 322, 324-25 (2d Cir. 1986) ("Appellant cannot now contend that the Government's case should be dismissed because of the additional time which he himself insisted was necessary. This, as the district court stated, would be mousetrapping of a rather egregious order."). If he wanted a status hearing sooner than one was held, he should have sought one. *See Rush*, 738 F.2d at 508; *United States v. Jodoin*, 672 F.2d 232, 238 (1st Cir.1982) (Breyer, J.) (noting, where defense counsel sought continuances because of other trials, failure to object to additional continuance, which record suggested it suited his convenience).

Finally, holding defendant accountable for his agreement to an open-ended status date does not in any way undermine either the letter or spirit of the Speedy Trial Act. "Doubtless it is generally preferable to limit a continuance to a definite period for the sake of clarity and certainty;

but at the same time it is inevitable that in some cases, like the present one, a court is forced to order an (h)(8) continuance without knowing exactly how long the reasons supporting the continuance remain valid." *Rush*, 738 F.2d at 508.  Here, the discovery issue that triggered the request in the Joint Memorandum—providing copies of recorded conversations—was not resolved during the period of the continuance.[2]  As late as December 2007, the government was still working to provide defendant the recorded conversations in an accessible format.  Indeed, at the January 2008 status conference, defendant requested more time to review the recordings.  Thus, insofar as the parties jointly moved in August 2007 for a continuance in order to resolve the issue, the continuance was proper because the matter that triggered it "remain[ed] valid" up to (and through) the January 2008 status conference.

*United States v. Barnes*, 159 F.3d 4 (1st Cir. 1998), on which defendant relies, is readily distinguishable.  There the district court ordered a continuance on its own motion, without defense counsel's consent and with no explanation as to how the continuance would serve the interests of justice.  By contrast, here, the defendant, as a party to the Joint Memo, expressly sought an openended continuance and explained how the continuance would serve the interests of justice.

Similarly, defendant's reliance on *United States v. Tunnessen*, 763 F.2d 74 (2d Cir. 1985), is misplaced.  In *Tunnessen*, the district court *sua sponte* continued a case and made an "ends-of-justice" finding after the speedy trial clock had expired—indeed, in connection with a motion by defendants to dismiss the case.  The Second Circuit expressed concern about the

---

[2] The other issue was to explore a non-trial disposition which, as the pendency of this case shows, was also not resolved during the period of the continuance.

risks raised by an after-the-fact finding:

> While we do not suggest that it occurred here, the procedure followed in this case does contain the risk that a district judge in a particular case may simply rationalize his action long after the fact, in order to cure an unwitting violation of the Act. Moreover, had the district judge in this case stated at the time he initially set the trial date, before the speedy trial clock had run, that he was granting an ends-of-justice continuance, the parties would have been on notice and the whole Speedy Trial Act problem might have been avoided. As appellants point out, the Act itself requires consultation with counsel before setting the trial date. If defense counsel had been prepared to go to trial in late July, as they now claim, they could have informed the judge that he was mistaken in concluding that they needed more time. . . . As matters stand, however, during the more than three month gap between the initial setting of the trial date and the recording of findings neither side had reason to know that an ends-of-justice continuance had been granted. The July 6 Memorandum Decision and Order makes no reference to a continuance based on the ends of justice. Nor had any party requested that such a continuance be granted at that time.

*Tunnessen*, 763 F.2d at 78 (citations omitted).

Here, there was no risk that the Court might simply rationalize its action long after the fact, in order to cure an unwitting violation of the Act," and no risk that the Court might be mistaken about the need for a continuance, as the parties themselves had requested it. Indeed, a fair reading of *Tunnessen* suggests that the result might have been different if the order was entered after the fact on the basis of a joint motion that set forth the reasons why an ends-of-justice continuance was warranted.

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss the indictment is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 2, 2008